ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **CARLOS SERRANO IRIZARRY**<br>DEMANDANTE(S)-APELANTE(S)<br><br>V.<br><br>**BRENDA L. ANGUEIRA SOTO**<br>DEMANDADA(S)-APELADA(S) | **KLAN202500271** | *APELACIÓN*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN**<br><br>Caso Núm.<br>**SJ2024CV05809 (405)**<br><br>Sobre:<br>Hogar Seguro |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 29 de abril de 2026.

Comparece ante este Tribunal de Apelaciones, el señor **CARLOS SERRANO IRIZARRY** (señor **SERRANO IRIZARRY**) mediante *Apelación Civil* entablada el 1 de abril de 2025. En su recurso, nos solicita que revisemos la *Sentencia* dictaminada el 21 de febrero de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan.[1] En alusiva decisión judicial, se designó la residencia localizada en la Calle Arkansas 1710 de la Urbanización San Gerardo, como *hogar seguro* en beneficio de la hija menor de las partes, **LEEANN CAMILA SERRANO ANGUEIRA** (LCSA). Apuntó que dicha designación estará vigente hasta que LCSA advenga a la mayoría de edad o hasta que cumpla los 25 años, si está cursando estudios universitarios al cumplir los 21 años y permanece estudiando. Durante la vigencia de esta designación no se podrá vender la propiedad a un tercero sin la autorización del Tribunal. Además, se identificaron como beneficiarias a este derecho a la señora

---

[1] Esta determinación judicial fue notificada y archivada en autos el 21 de febrero de 2025. Apéndice de la *Apelación Civil*, páginas 52-60.

Número Identificador:
SEN2026_____

**BRENDA L. ANGUEIRA SOTO** (señora **ANGUEIRA SOTO**), y a su hermana JULIANNA MORALES ANGUEIRA (JMA).

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 25 de junio de 2024, el señor **SERRANO IRIZARRY** interpuso una *Urgente Moción en Solicitud de Decreto de Hogar Seguro*.[2] En esta adujo estar residiendo la propiedad junto a su hija LCSA. Sustentó tener *un Contrato de Arrendamiento con Opción a Compra* sobre la propiedad perteneciente a la señora **ANGUEIRA SOTO**. Acotó no haber sido cualificado por el banco para ejercer la opción a compra, de modo que, pidió una extensión de alquiler y opción a la señora **ANGUERIA SOTO.** Manifestó que esta rechazó su petición y, por ende, tendría que mudarse de la propiedad. Especificó que tal proceder causaría gran incertidumbre, ansiedad e impacto, así como riesgo a la seguridad de la menor LCSA. Ello dado que, la menor LCSA ha residido en esa propiedad desde su nacimiento, hasta el presente, dado que ostenta la custodia compartida en semanas alternas. Suplicó que se declarara dicho inmueble como *hogar seguro*. Acompañó copia de la *Escritura de Divorcio por Consentimiento Mutuo* que contiene a su vez un documento intitulado *Estipulación y Acuerdos sobre Divorcio por Consentimiento Mutuo*.

A consecuencia de ello, el 1 de julio de 2024, la señora **ANGUEIRA SOTO** instó *Demanda* sobre desahucio contra el señor **SERRANO IRIZARRY**.[3] En respuesta, el 15 de julio de 2024, el señor **SERRANO IRIZARRY** presentó una *Urgentísima Moción en Solicitud de Orden Protectora en Favor de Menor* en la cual peticionó la paralización del caso hasta tanto se resolviera la controversia sobre *hogar seguro*.[4]

---

[2] Apéndice de la *Apelación Civil*, págs. 61-77.
[3] Al caso le fue asignado el número SJ2024CV06223. Apéndice de la *Apelación Civil*, págs. 78-86.
[4] Apéndice de la *Apelación Civil*, págs. 87-88.

Más tarde, en la misma fecha, la señora ANGUEIRA SOTO presentó una *Moción Urgente en Solicitud de Desestimación al Amparo de la Regla 10.2 de las de Procedimiento Civil*.[5] Expuso no haber sido emplazada conforme a las Reglas de Procedimiento Civil.

Al día siguiente, el 16 de julio de 2024, mediante *Moción Informativa y en Solicitud de Desistimiento de Orden Protectora*, el señor SERRANO IRIZARRY notificó que se había paralizado el trámite de desahucio hasta que se adjudicara la controversia sobre hogar seguro.[6] Además, presentó una *Oposición a Solicitud de Desestimación y en Solicitud de Remedios*.[7] Así las cosas, ese mismo día, se dictó *Resolución* dando por desistida la petitoria de orden protectora presentada por el señor SERRANO IRIZARRY.[8]

Poco después, el 24 de julio de 2024, se expidió *Resolución* declarando *No Ha Lugar* a la súplica de desestimación; le requirió a secretaria expedir un nuevo emplazamiento y le impuso al señor SERRANO IRIZARRY informar inmediatamente que diligenciara el emplazamiento.[9]

Consecutivamente, el 25 de octubre de 2024, la señora ANGUEIRA SOTO presentó su *Contestación en Oposición a Solicitud de Hogar Seguro* conteniendo sus defensas afirmativas y una *Reconvención*.[10] Admitió que para el año 2021 acordaron un arrendamiento con opción a compra. Tiempo después, el 4 de noviembre de 2024, el señor SERRANO IRIZARRY presentó una *Réplica a Reconvención* y levantó varias defensas afirmativas.[11]

Luego de varios incidentes procesales, el 15 de enero de 2025, se celebró la audiencia evidenciaria sobre *hogar seguro*. En dicha audiencia, las partes informaron haber llegado a unas estipulaciones. Dichas estipulaciones son:[12]

---

[5] Apéndice de la *Apelación Civil*, págs. 89-94.
[6] *Íd.*, pág. 95.
[7] *Íd.*, págs. 96-98.
[8] *Íd.*, págs. 99-100.
[9] Apéndice de la *Apelación Civil*, págs. 101-102.
[10] *Íd.*, págs. 103-108.
[11] *Íd.*, págs. 109-111.
[12] Las partes ratificaron bajo juramento las estipulaciones y presentaron su prueba testifical. Apéndice de la *Apelación Civil*, págs. 112-134.

- Que la propiedad ubicada en la Urbanización San Gerardo, calle Arkansas, número 7, la adquirió la señora ANGUEIRA previo al matrimonio por lo que es privativa de ella.
- Que el matrimonio se contrajo el 10 de octubre de 2010 y la propiedad mencionada se convirtió en el hogar conyugal.
- Que viviendo el matrimonio en el hogar conyugal nace la menor el 4 de diciembre de 2011.
- Que antes del divorcio las partes acordaron que la custodia de la meno[r] será compartida en tiempo igual en semanas alternas.
- Que la Escritura 5 del 29 de octubre de 2021 formaliza el divorcio de las partes.
- Que el contrato de arrendamiento fue suscrito por las partes el 23 de agosto de 2021, previo al divorcio, en el cual establecen que el señor SERRANO pagará el arrendamiento con opción a compra.

Incluimos un resumen de los testimonios brindados ante el Tribunal de Primera Instancia:

**Testimonio del señor SERRANO IRIZARRY**

Narró que desde su matrimonio con la señora ANGUEIRA SOTO hasta el divorcio, el matrimonio siempre vivió en el mismo lugar, entiéndase, en la casa ubicada en la Urbanización San Gerardo.[13] Aseguró que previo al divorcio la señora ANGUEIRA SOTO y el acordaron que ambos retendrían la custodia de la menor en un 50% en semanas alternas.[14] Señaló que llegaron a un acuerdo de arrendamiento de la propiedad –Urbanización San Gerardo– con el propósito de que la ruptura fuese lo menos accidentada posible para el bienestar de la menor LCSA.[15] Atestiguó que en ningún momento la señora ANGUEIRA SOTO le indicó que quería permanecer en ese hogar –Urbanización San Gerardo– con su hija LCSA, en lugar de alquilárselo, y tampoco esta le comunicó que a la terminación del contrato tenía deseo de vivir en la antes susodicha propiedad con la menor LCSA.[16] Declaró que, desde que se concretó el divorcio, y se quedó viviendo en el hogar conyugal, la señora ANGUEIRA SOTO ha estado viviendo en una casa al frente de su madre –de la señora ANGUEIRA SOTO.[17] Destacó que su interés en que se decretara el hogar seguro en beneficio de la menor LCSA se debía a que ese fue su hogar y entorno desde que nació, a que tiene mascotas, amistades y vecinos que la conocen, además de que su escuela está a pasos.[18] Arguyó que su intención al formalizar el contrato de arrendamiento con la señora ANGUEIRA

---

[13] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 17, líneas 12-20.

[14] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 17, líneas 21-25; pág. 18, línea 1.

[15] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 18, líneas 2-14.

[16] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 18, líneas 17-24; pág. 19, líneas 1-8.

[17] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 19, líneas 9-13.

[18] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 19, líneas 22-25; pág. 20, líneas 1-10.

**SOTO** era de manera permanente, pues quería el domicilio para que su hija la viviera, pero no pudo adquirir la propiedad porque no ha podido financiar con el banco; y apuntaló que se encontraba todavía realizando gestiones.[19] Enunció que, de no adjudicarse el derecho del hogar seguro en beneficio de la menor LCSA y suyo, tendría que buscar otra casa y arrendar, pues no tenía otra opción.[20] Amplió que de las gestiones que ha realizado, no hay casas disponibles en el área –de la Urbanización de San Gerardo– y muchas de las viviendas que rentan no son costo efectivas.[21] Relató que su interés es que la menor LCSA tenga su hogar seguro, sin tener la preocupación y la incomodidad de mes a mes ver si se tienen que mudar.[22] Resumió que realizó y sigue realizando gestiones parar adquirir la casa, tales como tomar "webinars" y acudir a la FHA, así como recurrir a todo tipo de ayudas.[23]

En el contrainterrogatorio, el señor **SERRANO IRIZARRY** articuló que la intención de la señora **ANGUEIRA SOTO** era vender la propiedad de referencia a un tercero, pero que no le constaba porque esta no se lo había expresado.[24] De otro lado, ratificó que le preocupaba no conseguir propiedades cercanas a donde actualmente vive, y tendría inconveniente en mudarse a áreas un poco más lejanas o aledañas, puesto que habría tapón.[25] Asintió que es profesor en un instituto de mecánica y no trabajaba desde la casa.[26] Por último, afianzó que sigue haciendo gestiones de financiamiento para adquirir la propiedad de la señora **ANGUEIRA SOTO**, y le gustaría permanecer en la propiedad para una renta a través de un contrato.[27]

En el redirecto el señor **SERRANO IRIZARRY** esgrimió que la señora **ANGUEIRA SOTO** le clamó que desalojara la casa mediante una carta de desalojo, junto con la *Demanda* de desahucio.[28]

En el recontra, el señor **SERRANO IRIZARRY** desplegó que no tenía conocimiento sobre los acercamientos realizados por la señora **ANGUEIRA SOTO** para recuperar la propiedad.[29]

---

[19] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 20, líneas 11-25; pág. 21, línea 1.

[20] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 22, líneas 5-12.

[21] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 22, líneas 13-22.

[22] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 23, líneas 5-12.

[23] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 24, líneas 9-19.

[24] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 35, líneas 8-21.

[25] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 39, líneas 13-25; pág. 40, líneas 1-19.

[26] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 42, líneas 5-25.

[27] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 43, líneas 14-25; pág. 44, líneas 1-5.

[28] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 50, líneas 20-25; pág. 51, líneas 1-3.

[29] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 54, líneas 18-25; pág. 55, líneas 1-12.

**Testimonio de la señora ANGUEIRA SOTO**

Manifestó que, previo a que se concretara el divorcio, no tenía la intención de quedarse en la casa –de la Urbanización de San Gerardo–porque había suscrito un contrato con el señor **SERRANO IRIZARRY** para que este se quedara en calidad de arrendador y tuviera opción a comprarla.[30] Reconoció que tampoco tenía la intención de vivir la casa de referencia del señor **SERRANO IRIZARRY** no poder comprarla, puesto que, según surge del contrato, podría venderla a una tercerea persona.[31] Con relación a su intención de vivir en la antes referida propiedad, expresó que no presentó ninguna moción al tribunal indicando querer mudarse a la misma.[32] Pormenorizó que se encuentra viviendo alquilada en una residencia familiar y necesita regresar a su hogar, ya que no posee otra propiedad inmueble a su nombre.[33] Detalló que no presentó prueba del contrato de alquiler de la propiedad, ni de las circunstancias que le hacían retornar a la residencia conyugal.[34] Exteriorizó no haber demostrado intención o voluntad alguna de vivir en la casa –de la Urbanización de San Gerardo–con su hija, hasta tanto el señor **SERRANO IRIZARRY** invocó el hogar seguro.[35]

En el curso del contrainterrogatorio, la señora **ANGUEIRA SOTO** esbozó que, a la fecha, no tenía intención de vender la propiedad.[36] Informó que no entendió que debía llevar el contrato de arrendamiento, así como la evidencia de pago de la propiedad en donde reside.[37]

En el redirecto, la señora **ANGUEIRA SOTO** corroboró que no había presentado ninguna prueba conducente a demostrar su intención de vivir en la propiedad, hasta tanto el señor **SERRANO IRIZARRY** imploró el hogar seguro.[38]

Subsiguientemente, la señora **ANGUEIRA SOTO** fue llamada como testigo de la parte demandada. Indicó que, entre los acuerdos llevados a cabo con el señor **SERRANO IRIZARRY**, se encontraba que este permanecería como inquilino de la propiedad –de la Urbanización San Gerardo– bajo un contrato de Opción a Compra.[39] Narró que convinieron que él tendría para adquirir la propiedad

---

[30] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 60, líneas 2-7.

[31] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 60, líneas 2-25; pág. 61, líneas 1-16.

[32] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 61, líneas 17-24.

[33] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 62, líneas 21-25; pág. 63, líneas 1-3.

[34] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 68, líneas 7-24.

[35] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 73, líneas 19-25.

[36] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 75, líneas 1-5.

[37] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 75, líneas 6-23.

[38] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 77, líneas 5-15.

[39] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 80, líneas 1-9.

hasta el 2 de enero de 2024.[40] Aseveró que el señor **SERRANO IRIZARRY** no realizó ningún acercamiento a su persona para llevar a cabo la compraventa.[41] Añadió que le comentó al señor **SERRANO IRIZARRY** sobre el vencimiento del contrato y le tenía que informar si iba a adquirir la propiedad o no. Alegó que, al no obtener respuesta, llamó al banco para validar el proceso de la compraventa.[42] Agregó que la razón principal por la que estaba exigiendo el desalojo era para regresar al hogar y comprar la propiedad donde estaba alquilada, pero no lo pudo hacer.[43] Explicó que la propiedad donde estaba de inquilina pertenecía a sus padres, específicamente a su madre, y el acuerdo habido entre estos era hasta que ella pudiera comprar o hasta que sus padres necesitaran vender.[44] Aclaró que las circunstancias cambiaron, su madre tenía la necesidad de vender, por lo cual, tenía urgencia de mudarse de la propiedad.[45] Comunicó que, de no poder recuperar su propiedad, estaría viviendo en la casa de su madre hasta que se tuviera que mudar y buscar otra residencia. Con respecto a su situación financiera, enunció que estaba estable, había salido de una quiebra y estaba recuperando su crédito.[46] Puntualizó que no podría adquirir otra propiedad, porque su crédito no estaba restablecido.[47]

En el transcurso del contrainterrogatorio, respondió que tenía un contrato abierto, no había un término de alquiler, como tampoco existía alguna condición para que esta se tuviera que ir de la propiedad y su madre no le había puesto ningún desahucio.[48] Afirmó que podía quedarse el tiempo que quisiera en la propiedad, puesto que no tenía una fecha de finalidad que le requiriera irse.[49] Confirmó que a la menor LCSA le afectaría el asunto de mudarse de la casa.[50]

En el redirecto, clarificó que no podía permanecer indefinidamente en la casa de su madre, dado que ella iba a vender la propiedad.[51] Enfatizó que ella no

---

[40] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 82, líneas 13-23.

[41] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 82, líneas 24-25; pág. 83, líneas 1-2.

[42] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 83, líneas 3-22.

[43] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 85, líneas 14-24; pág. 86, líneas 1-8.

[44] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 90, líneas 20-25; pág. 91, líneas 1-2; pág. 94, líneas 10-14.

[45] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 94, líneas 15-19; pág. 96, líneas 10-13.

[46] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 97, líneas 21-25; pág. 98, línea 1.

[47] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 98, líneas 2-6.

[48] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 100, líneas 3-25; pág. 101, líneas 1-16.

[49] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 101, líneas 17-21.

[50] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 107, líneas 3-11.

[51] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 109, líneas 5-15.

era quien decidía cuándo se vendía la propiedad, que eso lo decidía la dueña.[52]

En el recontrainterrogatorio, sostuvo que no presentó prueba de que su madre estuviese vendiendo la propiedad, ni de que estuviera en una necesidad imperiosa de mudarse de allí.[53]

Finalmente, el 21 de febrero de 2025, se dictaminó la *Sentencia* apelada. Así, el 9 de marzo de 2025, el señor **SERRANO IRIZARRY** presentó una *Moción en Solicitud de Enmienda a Determinaciones de Hecho y Determinaciones de Hechos Adicionales al Amparo de la Regla 43 de las de Procedimiento Civil y Reconsideración Parcial al Amparo de la Regla 47 de las de Procedimiento Civil Vigentes.*[54] Ese mismo día, se pronunció *Resolución Interlocutoria* declarando *no ha lugar* el aludido escrito.[55]

Inconforme, el 1 de abril de 2025, el señor **SERRANO IRIZARRY** incoó ante nos una *Apelación Civil.* En la misma, señala el(los) siguiente(s) error(es):

> Erró el Tribunal y abuso de su discreción no considerar las enmiendas a las determinaciones de hecho ni considerar determinaciones adicionales a las determinaciones de hecho a pesar de surgir de los testimonios y prueba recibida que eran relevantes para atender y adjudicar la controversia conforme la jurisprudencia aplicable.
>
> El TPI y cometió error manifiesto, abus[ó] de su discreción y erró en la aplicación del derecho al discriminar en contra del padre y nombrar como beneficiaria a la madre aun cuando establece que ambos están en igualdad de condiciones sobre la custodia de la menor, pero solo favoreció a la madre porque es la titular del bien privativo, ignorando el Tribunal otra prueba de otros factores esenciales a consider[a]r para resolver en equidad, especialmente el mejor interés de la menor.

El 7 de abril de 2025, intimamos *Resolución* en la cual concedimos un término de diez (10) días para informar el método de reproducción de la prueba oral y un plazo de treinta (30) días para presentar alegato(s) en oposición al recurso. Seguidamente, el 9 de mayo de 2025, la señora **ANGUEIRA SOTO** presentó su *Alegato en Oposición a Apelación Civil.* El 18 de junio de 2025, se decidió *Resolución* acogiendo la transcripción de la prueba

---

[52] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 110, líneas 5-15.
[53] *Transcripción de la Prueba Oral* (TPO) de la audiencia celebrada el 15 de enero de 2025, en la pág. 113, líneas 1-7.
[54] Apéndice de la *Apelación Civil*, págs. 31-51.
[55] Apéndice de la *Apelación Civil*, págs. 29-30.

oral. [56]

Evaluado concienzudamente el expediente del caso, habiéndole dado la debida consideración a la transcripción de la prueba oral (TPO) y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A – *ENMIENDAS O DETERMINACIONES INICIALES O ADICIONALES*

Las Reglas de Procedimiento Civil de 2009 proveen ciertos mecanismos posteriores a una sentencia, resolución u orden, para aquella parte que resulte perdidosa por un dictamen prescrito por el Tribunal de Primera Instancia. Entre estos, se encuentra la solicitud de enmienda o determinaciones de hechos iniciales o adicionales. En lo pertinente, la Regla 43.1 de Procedimiento Civil de 2009 especifica:

> No será necesario solicitar que se consignen determinaciones de hechos a los efectos de una apelación, pero a moción de parte, presentada a más tardar quince (15) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes si éstas no se hubiesen hecho por ser innecesarias, de acuerdo con la Regla 42.2, **podrá enmendar o hacer determinaciones adicionales o podrá enmendar la sentencia en conformidad**. Si una parte interesa presentar una moción de enmiendas o determinaciones iniciales o adicionales, reconsideración o de nuevo juicio, éstas deberán presentarse en un solo escrito y el tribunal resolverá de igual manera. En todo caso, la suficiencia de la prueba para sostener las determinaciones podrá ser suscitada posteriormente aunque la parte que formule la cuestión no las haya objetado en el tribunal inferior, no haya presentado una moción para enmendarlas o no haya solicitado sentencia.
> La moción de enmiendas o determinaciones iniciales o adicionales se notificará a las demás partes en el pleito dentro de los quince (15) días establecidos por esta regla para presentarla ante el tribunal. El término para notificar será de cumplimiento estricto.[57]

En otras palabras, en dicha solicitación se requiere que "el tribunal que dicta una sentencia la corrija mediante enmiendas formulando

---

[56] La transcripción de la prueba oral (TPO) nos fue sometida en conformidad con las Reglas 19 y 76 del Reglamento del Tribunal de Apelaciones. Reglas 19 y 76 del Reglamento del Tribunal de Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, págs. 37, 105-108, 216 DPR ____ (2025).
[57] 32 LPRA Ap. V, R. 43.1. (Énfasis nuestro)

determinaciones de hecho—a base de la prueba presentada en juicio— o conclusiones de derecho pertinentes al fallo".[58] Empero, de la letra de la antes referida disposición resulta evidente que "[e]l tribunal de instancia *no está obligado* a hacer determinaciones de hecho y de derecho adicionales luego de ser solicitadas por una parte, si es que éstas no proceden. La utilización de la palabra "podrá" le imparte un carácter discrecional para que el juez determine si las mismas proceden o no."[59] Por tanto, al ser una determinación discrecional del juez, una mera súplica al amparo de la Regla 43.1 de las de Procedimiento Civil de 2009 no obliga a que el tribunal de instancia formule determinaciones de hechos adicionales o enmiende las ya realizadas.[60]

### - B – *APRECIACIÓN DE LA PRUEBA*

La Regla 42.2 de las de Procedimiento Civil de 2009 instituye que las determinaciones de hechos que contempla el foro de instancia a base de testimonio oral "no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos".[61]

Similarmente, la Regla 110 de las de Evidencia instaura que "será el juzgador de hechos quien deberá evaluar la prueba presentada con el propósito de determinar cuáles hechos fueron establecidos o demostrados".[62] De ese modo, es norma reiterada que cuando se le interpela a un foro apelativo que revise [determinaciones] de hechos, la apreciación de la prueba, en primer lugar, le corresponde al tribunal sentenciador dado que estos tienen la oportunidad de observar y oír a los testigos, y por ello, están en mejor posición de evaluarla.[63] En este aspecto, la evaluación del foro sentenciador merece respeto y deferencia.[64]

---

[58] *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 262 (2018), citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 466; *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 357 (2003).
[59] *Blás v. Hosp. Guadalupe*, 146 DPR 267, 319 (1998).
[60] *Constructora Estelar v. Aut. Edif. Púb.*, 183 DPR 1, 26 (2011).
[61] 32 LPRA Ap. V, R. 42.2.
[62] 32 LPRA Ap. VI, R. 110.
[63] *Semidey et al. v. Fcia. Belmonte et al.*, 211 DPR 222 (2023); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 98-99 (2000).
[64] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011).

Cónsono con ello, por lo general, "los tribunales apelativos no intervenimos ni alteramos innecesariamente las determinaciones de hechos que hayan formulado los tribunales de primera instancia luego de admitir y aquilatar la prueba presentada durante el juicio."[65] Es decir, significa que no debemos descartar las determinaciones "tajantes y ponderadas del foro de instancia" y sustituirlas por nuestra propia apreciación, a base de un examen del expediente del caso.[66]

Ahora bien, la deferencia al juicio del juzgador de hechos "no es absoluto" pues "[u]na apreciación errónea de la prueba no tiene credenciales de inmunidad" frente a nuestra facultad revisora.[67] Los foros apelativos podremos intervenir con la apreciación de la prueba cuando exista error manifiesto, pasión, prejuicio, parcialidad o cuando un análisis integral, detallado y minucioso de la prueba así lo justifique.[68] Esto sin olvidar que "la intervención indiscriminada con la adjudicación de credibilidad que se realiza a nivel de instancia significaría el caos y la destrucción del sistema judicial existente en nuestra jurisdicción".[69]

Referente al prejuicio, pasión o parcialidad, existen si el juzgador "actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna".[70] En esa dirección, se consideran erróneas las conclusiones del [tribunal] apelado, si de un análisis de la totalidad de la prueba, el foro apelativo entiende que esta se distancia de la realidad fáctica o es inherentemente imposible o increíble.[71]

---

[65] *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 65 (2009).
[66] *Íd.*, págs. 65- 66.
[67] *Ramos Acosta v. Caparra Dairy, Inc.*, 113 DPR 357, 365 (1982); *Vda. de Morales v. De Jesús Toro*, 107 DPR 826, 829 (1978).
[68] *Pueblo v. García Colón I*, 182 DPR 129 (2011); *González Hernández v. González Hernández, supra*, pág. 777.
[69] *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018).
[70] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).
[71] *Pueblo v. Irizarry*, 156 DPR 780, 816 (2002).

Mejor dicho, la tarea de adjudicar la credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba desfilada, lo cual incluye, entre otros factores, observar el comportamiento del testigo mientras ofrece su testimonio (demeanor) y escuchar su voz.[72] Por eso, los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad, o que incurrió en error manifiesto.[73] Cuando la alegación es de pasión, prejuicio o parcialidad, los foros apelativos debemos verificar primordialmente si el juez de primera instancia cumplió su función de adjudicar de manera imparcial, pues solo así podremos descansar en sus determinaciones de hechos.[74]

Del mismo modo, el error manifiesto ocurre cuando, de un análisis de la totalidad de la evidencia, el foro revisor queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de hecho del Tribunal.[75] En ese sentido, este estándar de revisión restringe nuestra facultad para sustituir el criterio del tribunal primario a escenarios en que, de la prueba admitida, no exista base suficiente que apoye su determinación.[76] Resulta pertinente mencionar que, incluso, las diferencias de criterio jurídico no alcanzan ese estándar.[77] En cuanto a la prueba testifical, procede nuestra intervención con la *apreciación de la prueba* o la adjudicación de credibilidad de los testigos en aquellos casos en que, luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que conmueva nuestro sentido básico de justicia.[78] Por ello, quien impugne una sentencia o resolución bajo estos

---

[72] *Gómez Márquez et al. v. El Oriental*, 203 DPR 783 (2020).
[73] *Íd.*
[74] *Íd.*
[75] *Íd.*
[76] *Gómez Márquez et al. v. El Oriental, supra*, pág. 795.
[77] *Íd.*
[78] *Pueblo v. Cabán Torres*, 117 DPR 645, 648 (1986).

parámetros deberá presentar evidencia sustancial que derrote la presunción de corrección que cobija la decisión del foro primario. Esto es, evidencia que en una mente razonable pueda aceptarse como adecuada para sostener una conclusión.[79]

Ahora bien, esta norma de deferencia no alcanza a la *apreciación de la prueba* documental o pericial realizada por el foro de primera instancia. En este contexto, la jurisprudencia del Tribunal Supremo ha sido consistente en que los foros revisores nos encontramos en igualdad de condiciones con el foro sentenciador para evaluar y apreciar la prueba documental admitida en evidencia.[80] Además, nos encontramos facultados para adoptar nuestro criterio en la evaluación y *apreciación de la prueba* pericial, y hasta descartarla, aunque esta sea técnicamente correcta.[81]

### - C - *HOGAR SEGURO*

En nuestro ordenamiento jurídico, la figura del derecho a *hogar seguro* se creó con el propósito de evitar que el hogar familiar del deudor pudiera ser ejecutado en cobro de una deuda.[82] Así pues, al aislar el hogar familiar del deudor de sus acreedores, se le proveía cierta seguridad y estabilidad a la familia de este.[83]

A su vez, la Ley Núm. 195 de 13 de septiembre de 2011, según enmendada, conocida como la *"Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar"* comprueba la política pública del Gobierno de Puerto Rico de asegurar que todo individuo o jefe de familia domiciliado en Puerto Rico, goce de una protección que cobije la posesión y el disfrute de su residencia principal **contra el riesgo de ejecución de esa propiedad (énfasis nuestro)**.

Por otro lado, con el pasar de los años, la figura del *hogar seguro* fue

---

[79] *Vázquez Cintrón v. Banco Desarrollo,* 171 DPR 1, 25 (2007).

[80] *Albino v. Ángel Martínez, Inc.,* 171 DPR 457, 487 (2007); *Díaz García v. Aponte Aponte,* 125 DPR 1, 13-14 (1989).

[81] *González Hernández v. González Hernández, supra,* pág. 777.

[82] *Candelario Vargas v. Muñiz Díaz,* 171 DPR 530, 538 (2007), citando a Wuicich v. Solomon-Wickersham Co., 157 P. 972, 973 (Ariz. 1916).

[83] *Íd.*

plasmada en el Código Civil de Puerto Rico de 2020. En particular, el Artículo 477 del Código Civil de Puerto Rico de 2020, sobre el *derecho a permanecer en la vivienda familiar*, consagra:

> Cualquiera de los excónyuges o cualquiera de los hijos que quedan bajo su patria potestad, puede solicitar el derecho a permanecer en la vivienda de la Sociedad de Gananciales que constituye el hogar principal del matrimonio y de la familia antes de iniciarse el proceso de divorcio. Este derecho puede reclamarse desde que se necesita, en la petición de disolución del matrimonio, durante el proceso o luego de dictarse la sentencia. En los casos donde la vivienda familiar principal sea privativa de cualquiera de los excónyuges y exista otra vivienda perteneciente a la Sociedad de Gananciales, el Tribunal podrá establecer como vivienda familiar la propiedad perteneciente a la Sociedad de Gananciales. En los casos en que no exista una vivienda perteneciente a la Sociedad de Gananciales, el tribunal determinará c[ó]mo se cumplirá con el derecho a hogar seguro.[84]

Para conceder el *derecho a permanecer en la vivienda familiar*, el tribunal debe considerar las siguientes circunstancias:

> (a) **los acuerdos de los cónyuges sobre el uso y el destino de la vivienda durante la vigencia del matrimonio y después de su disolución**;
> (b) si el cónyuge solicitante mantiene la custodia de los hijos menores de edad;
> (c) si el cónyuge solicitante retiene la patria potestad prorrogada o la tutela de los hijos mayores incapacitados o con impedimentos físicos que requieren asistencia especial y constante en el entorno familiar;
> (d) si los hijos mayores de edad, pero menores de veinticinco (25) años, permanecen en el hogar familiar mientras estudian o se preparan para un oficio;
> (e) si la vivienda familiar es el único inmueble que puede cumplir razonablemente ese propósito dentro del patrimonio conyugal, sin que se afecte significativamente el bienestar óptimo de los beneficiados al momento de su concesión con más necesidad de protección;
> (f) si el cónyuge solicitante, aunque no tenga hijos o, de tenerlos, no vivan en su compañía, necesita de esa protección especial, por su edad y situación personal; y
> (g) **cualquier otro factor que sea pertinente para justificar el reclamo**.[85]

Incluso, se puede contemplar el **periodo de tiempo** en que la vivienda reclamada como *hogar seguro* había sido la vivienda familiar de las partes.[86] Por consiguiente, una vez implorado, el(la) juzgador(a) determinará

---

[84] 31 LPRA § 6851. Es un mecanismo de protección a la unidad familiar y de lo que ha sido el centro de la vida común. *Candelario Vargas v. Muñiz Díaz*, supra, pág. 546.
[85] Artículo 478 del Código Civil de Puerto Rico de 2020, 31 LPRA § 6852. (Énfasis nuestro).
[86] *Candelario Vargas v. Muñiz Díaz*, *supra*, págs. 544-545 (Énfasis nuestro).

lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación.[87]

Más aun, el Artículo 479 del Código Civil de Puerto Rico de 2020, relativo a la *constitución del hogar seguro*, delimita: "[d]esde la concesión del derecho a permanecer en la vivienda familiar, el inmueble se convierte en el hogar seguro del solicitante y de los beneficiados al momento de su concesión que han de convivir en él. El Tribunal identificará a todos los beneficiados en la sentencia y establecerá las condiciones y el plazo en que cada cuál ha de disfrutarlo".[88]

Incluso, la persona que reclama el *derecho sobre la vivienda familiar* o *hogar seguro* podrá retener todos aquellos bienes de uso ordinario en la vivienda, pero no así las obras de arte, los objetos de colección u otros de valor extraordinario que no sean indispensables para el uso y disfrute del inmueble.[89]

El Artículo 481 fija que "[l]a solicitud del derecho a permanecer en la vivienda familiar luego de la disolución por divorcio, debe ventilarse en el mismo expediente. Si hay objeción fundamentada del titular del inmueble o de alguna tercera persona con derecho real sobre el mismo, la solución del asunto se hará en una vista plenaria. La solicitud del derecho luego de la disolución del matrimonio por la muerte o por la muerte presunta de un cónyuge se atenderá en vista sumaria".[90] Así que, el derecho de *hogar seguro* podrá reclamarse desde que se necesitare, pudiendo ser reclamado en la *Demanda* sobre divorcio, durante el proceso, o luego de decretarse el mismo.[91]

Nuestro Máximo Foro, en observancia de la política pública que procura el mejor beneficio (*favor filii*) y el interés optimo del(de la) menor, ha interpretado que el derecho a *hogar seguro* se extiende a la vivienda familiar aun cuando la misma no constituya un bien de carácter ganancial,

---

[87] *Candelario Vargas v. Muñiz Díaz*, 171 DPR 530, 542 (2007).
[88] 31 LPRA § 6853.
[89] Artículo 480 del Código Civil de Puerto Rico de 2020, 31 LPRA § 6854.
[90] Artículo 481 del Código Civil de Puerto Rico de 2020, 31 LPRA § 6855.
[91] *Candelario Vargas v. Muñiz Díaz*, *supra*, pág. 542.

sino un bien común entre excónyuges.[92] De ahí que "el derecho a hogar seguro se extiende también a la vivienda familiar habitual cuando ésta constituye un bien privativo del padre no custodio".[93] En concreto, ha decidido "**que el reconocimiento del hogar seguro no afecta la titularidad; que la propiedad se utilizó como el hogar conyugal; que es la única propiedad que la menor ha reconocido; y que el derecho a dominio está supeditado a los intereses sociales de proteger a los menores, a la familia, y al hogar donde éstos residen**".[94]

Precisamente, disipado que el interés propietario que pudieran tener los progenitores sobre la vivienda familiar habitual reclamada como *hogar seguro* no era un factor **determinante** al momento de decidir si procedía o no la petición de *hogar seguro*.[95] Ello dado que, el mejor bienestar o interés óptimo del menor supera el interés propietario que puedan tener los progenitores.[96]

Como resultado, una vez adjudicada la vivienda familiar al progenitor custodio en favor de los hijos en común, la atribución se convierte en una forma de contribuir a las cargas de manutención de esos menores y como tal se debe tratar.[97] En definitiva, sopeso que este derecho es uno estrictamente de naturaleza familiar, así, al atribuir la vivienda familiar al progenitor custodio no titular del inmueble en beneficio de su hijo, se busca "el mantenimiento de las mismas condiciones familiares existentes antes de la ruptura ... [lo que] constituye una forma de contribución a las cargas generadas con la separación o el divorcio que hay que afrontar".[98]

- III –

En el caso de autos, el señor **SERRANO IRIZARRY** argumenta, en síntesis,

---

[92] *Íd.,* pág. 543. Una propiedad ganancial que constituye la vivienda familiar no estará sujeta a división o liquidación mientras dure cualesquiera de las condiciones en virtud de las cuales se concedió. *Candelario Vargas v. Muñiz Díaz, supra,* pág. 542.
[93] *Íd.,* pág. 544.
[94] *Id.* (Énfasis nuestro).
[95] *Candelario Vargas v. Muñiz Díaz, supra,* pág. 547.
[96] *Íd.,* 543.
[97] *Candelario Vargas v. Muñiz Díaz,* 171 DPR 530, 547 (2007).
[98] *Id.,* pág. 545.

que el foro de instancia erró: (1) al no considerar las enmiendas a las determinaciones de hechos, ni las determinaciones de hechos adicionales a pesar de surgir de los testimonios y prueba desfilada que eran relevantes para atender y adjudicar la controversia; y (2) en la aplicación del derecho al discriminar en contra del padre y nombrar como beneficiaria a la madre aun cuando establece que ambos están en igualdad de condiciones sobre la custodia de la menor pero favoreciéndole solo por ser la titular del bien privativo.

La señora **ANGUEIRA SOTO** asevera que el señor **SERRANO IRIZARRY** no pudo ejercer la opción a compra de la propiedad, pues no cualificó y pretende permanecer allí. Agrega que la menor LCSA semanalmente pernocta con uno de sus progenitores. Reafirma que es a ella a quien le favorece el derecho de *hogar seguro* por ser su única residencia (privativa) y esta necesita regresar a la misma para garantizar un techo seguro a su hija.

En **primer lugar**, atenderemos el asunto relacionado a la *Moción en Solicitud de Enmienda a Determinaciones de Hecho y Determinaciones de Hechos Adicionales al Amparo de la Regla 43 de las de Procedimiento Civil y Reconsideración* presentada el 9 de marzo de 2025 por el señor **SERRANO IRIZARRY**. Sopesados detenidamente el legajo junto con la prueba testifical y documental acogemos las siguientes determinaciones de hechos:[99]

1. El Sr. Carlos Serrano Irizarry y la Sra. Brenda L. Angueira Soto estuvieron legalmente casados, habiendo contraído matrimonio el 10 de octubre de 2010. (Estipulación #6)[100]
2. Las partes procrearon una hija en común, Leeann Camila Serrano Angueira, que nació el 4 de diciembre de 2011.
3. Durante su matrimonio[,] las partes establecieron como su vivienda familiar la residencia ubicada en la Calle Arkansas, #1710, de la Urb. San Gerardo. (Estipulación # 3)[101]
4. La referida propiedad es privativa de la señora Angueira Soto, adquirida previo al matrimonio. (Estipulación # 7)[102]
5. Las partes no adquirieron propiedades inmuebles en común.
6. La señora Angueira Soto no tiene otra propiedad inmueble inscrita a su nombre.
7. El señor Serrano Irizarry no tiene propiedades inmuebles inscritas a su nombre.

---

[99] Hacemos constar que la numeración de las estipulaciones no coincide con el orden que obra en la *Minuta*.
[100] Debería indicar, "Estipulación 2".
[101] Debería indicar, "Estipulación 2".
[102] Debería indicar, "Estipulación 1".

8. Desde su nacimiento[,] Leeann Camila ha vivido en la propiedad de la Urb. San Gerardo, inicialmente con ambas partes y, luego del divorcio, cuando está bajo la custodia del señor Serrano Irizarry. (Estipulación # 4)[103]

9. El 29 de octubre de 2021[,] las partes se divorciaron ante Notario mediante la Escritura Pública número 5. (Estipulación # 1)[104]

10. Desde antes del divorcio[,] las partes acordaron que compartirían la Custodia de la menor, conforme a un arreglo de semanas alternas. (Estipulación # 5)[105]

14. En la cláusula sexta del contrato se dispuso que si la parte compradora (el señor Serrano Irizarry) no compraba la propiedad en el término establecido, la parte vendedora (la señora Angueira Soto) podría vender la propiedad a otra persona y, en el caso que aún interese comprar la propiedad, tendrán que negociar el precio de compraventa.

15. En la cláusula diecisiete del contrato se dispuso que la propiedad estaría destinada a uso residencial para una familia de un adulto y una menor, la hija de ambas partes.

17. El canon de arrendamiento que el señor Serrano Irizarry paga por residir en la propiedad es lo que corresponda al pago mensual de la hipoteca que grava la propiedad que, al momento de otorgar el contrato, ascendía a $787.51. Actualmente el pago asciende a $752.09.

18. El señor Serrano Irizarry no pasó prueba sobre sus ingresos ni sobre su capacidad para adquirir otra vivienda.

19. No nos mereció credibilidad el testimonio del demandante al ser contrainterrogado respecto a otros trabajos que realiza, además de su empleo como profesor de Mecánica en un Instituto.

20. La señora Angueira Soto reside en una propiedad que pertenece a sus padres en el área del Señorial.

21. Leeann Camila tiene una hermana que se llama Julianna Morales Angueira, de 19 años, que estudia en España y que reside junto a la demandada cuando está en Puerto Rico.

22. El señor Serrano Irizarry no desfiló prueba para sustentar su alegación de que la casa en la que reside la demandada en El Señorial es de ella, aunque aparece registrada a nombre de su madre porque se trató de una venta simulada.

23. La señora Angueira Soto presentó una acción de desahucio en contra del señor Serrano Irizarry, en el caso SJ2024CV06223.

24. Ambas partes ejercen, a tiempo igual, la Custodia de Leeann Camila.

25. Ambas partes solicitan se designe como Hogar Seguro de la menor la propiedad que ubica en la Cal[l]e Arkansas, # 1710, de la Urbanización San Gerardo.

En cuanto a las determinaciones de hechos número 11, 12, 13 y 16, se modificando o enmiendan y se acogen, para que lean como sigue:

11. **El 25 de agosto de 2021, con anterioridad al** divorcio, la señora Angueira Soto optó por mudarse a otra propiedad y permitir que el señor Serrano Irizarry y la menor se mantuvieran viviendo en la propiedad que constituyó la vivienda familiar.

12. El 25 de agosto de 2021, las partes suscribieron un contrato de arrendamiento con opción a compra a tenor con el cual la señora Angueira Soto le arrendaba al señor Serrano Irizarry la

---

[103] Debería indicar, "Estipulación 3".
[104] Debería indicar, "Estipulación 5".
[105] Debería indicar, "Estipulación 4".

propiedad de la Urb. San Gerardo y éste se comprometía a hacer todas las gestiones para adquirir la propiedad en un término establecido, **sujeto a que la opción a compra se podría ejercer una vez la señora Angueira Soto culminara su proceso de quiebra Capítulo 13 y obtuviese [el descargo (discharge)] de su caso por parte del Tribunal Federal**. (Estipulación # 2)[106]

13. En la cláusula tres del referido contrato de arrendamiento se estableció que el término de vigencia del contrato sería de 28 meses, del 25 de agosto de 2021 al 2 de enero de 2024, **sujeto a que la opción a compra se podría ejercer una vez la señora Angueira Soto culminara su proceso de quiebra Capítulo 13 y obtuviese [el descargo (discharge)] de su caso por parte del Tribunal Federal**.

16. Durante la vigencia del contrato de arrendamiento el señor Serrano Irizarry no logró ejercer la opción y adquirir la propiedad porque no cualificó con el Banco para adquirir la propiedad con la responsabilidad hipotecaria. **El señor Serrano Irizarry no podía adquirir la propiedad hasta tanto la señora Angueira Soto culminara su proceso de quiebra Capítulo 13 y obtuviese [el descargo (discharge)] de su caso por parte del Tribunal Federal.**

En relación con las **determinaciones de hechos adicionales** propuestas por el señor **SERRANO IRIZARRY**, le concedemos deferencia al foro de instancia, dado que no se evidenció o probó que se haya actuado con pasión, prejuicio, parcialidad, craso abuso de discreción, o se haya incurrido en error al no acoger su escrito.

En **segundo lugar**, revisamos la designación de los beneficiarios del *hogar seguro* decretado a favor de la menor LCSA y la señora **ANGUEIRA SOTO** por esta tener derecho propietario sobre el bien inmueble.

El señor **SERRANO IRIZARRY** plantea que es contrario a derecho adjudicar el *hogar seguro* en beneficio de la señora **ANGUEIRA SOTO** sin tomar en consideración el mejor bienestar de la menor. Ello dado que es quien ha vivido ininterrumpidamente con la menor LCSA en la vivienda que se reclama como *hogar seguro* y quien único tiene como intención real, genuina y previa al divorcio, que su hija LCSA continúe viviendo en el hogar de siempre. Añadió que, contrario a la señora **ANGUEIRA SOTO**, no tiene otro lugar donde vivir.

La *Sentencia* fechada 21 de febrero de 2025, comprende un presunto

---

[106] Debería indicar, "Estipulación 6". Véase *Contrato de Arrendamiento con Opción a Compra Clausulas y Condiciones* número 3.

análisis de los criterios contenidos en el Artículo 478 del Código Civil y decide:

> "...[s]e trata de un caso en el que ambas partes están en igualdad de condiciones con respecto a la custodia de la menor y en la que ambos coinciden en que se designe la propiedad como Hogar Seguro. No obstante, **solo una de las partes tiene un derecho propietario sobre la vivienda**. En ese sentido, conceder la solicitud a la señora ANGUEIRA SOTO permite mantener a la menor en su situación actual, en la que reside en la propiedad de San Gerardo en semanas alternas, **sin afectar el derecho propietario de la demandada**. Esa alternativa permite que la menor contin[ú]e viviendo en la casa que conoce como suya desde su nacimiento y que ha sido siempre su entorno".[107]

En el caso ante nos, el tribunal de instancia tomó en consideración el **interés o derecho propietario** de la señora ANGUEIRA SOTO para adjudicar el *hogar seguro.*

Es nuestro parecer, que el tribunal de instancia debió tomar en consideración el **periodo de tiempo** que la menor LCSA llevaba viviendo con el señor SERRANO IRIZARRY, su padre, en la propiedad que se solicita como *hogar seguro* y no que la señora ANGUEIRA SOTO, madre, es dueña del antes referido inmueble. Se infiere de los hechos, que desde la separación de los señores ANGUEIRA SOTO y SERRANO IRIZARRY en **agosto de 2021,** la menor LCSA, junto al señor SERRANO IRIZARRY, han permanecido residiendo en la propiedad sita en la Urbanización San Gerardo.[108] Han creado una rutina y un ambiente que le ha dado estabilidad a la menor LCSA, y trastocar la misma le afectaría emocionalmente a esta última, tal cual fue reconocido por la señora ANGUEIRA SOTO.[109]

De otro lado, nos parece meritorio aclarar que, de la prueba admitida en evidencia, así como de los testimonios de ambas partes, no surge que la señora ANGUEIRA SOTO demostrara haber cumplido con lo convenido en el *Contrato de Arrendamiento con Opción a Compra* firmado el 25 de agosto de

---

[107] Apéndice de la *Apelación Civil*, pág. 58 (Énfasis nuestro).
[108] El 25 de junio de 2024, el señor SERRANO IRIZARRY encausó su *Urgente Moción en Solicitud de Decreto de Hogar Seguro.*
[109] *Transcripción de la Prueba Oral* (**TPO**) de la audiencia celebrada el 15 de enero de 2025, en la pág. 107, líneas 3-11

2021.[110] En específico, estos concertaron:

1) Que la Parte Vendedora se obliga a vender a la Parte Compradora la propiedad descrita en el Párrafo Primero de este Documento.

2) El Precio de venta convenido por las partes lo será el monto del balance de cancelación de la hipoteca, incluyendo cargos y/o recargos por demoras acumulados, si alguno, al día de la fecha de realizar el cierre de la transacción de la compraventa con la Institución Financiera de preferencia del Comprador.

3) El término de esta Opción, cuyo término es condición esencial a este Contrato, será de 28 meses contados a partir de la fecha de la firma del presente contrato, comenzando el 25 de AGOSTO de 2021 y vence el 2 de enero de 2024. **Las Partes acuerdan que la Opción a Compra se podrá ejercer una vez la Parte Vendedora culmine su proceso de quiebra Capitulo 13 y obtenga [el descargo (discharge)] de su caso por parte del Tribunal Federal.** Este proceso puede tomar más o menos de los 28 meses estipulados en este Contrato. En cuyo caso este proceso tome menos de los 28 meses, las Partes podrán comenzar con el proceso de compraventa de la propiedad[.][111]

Tal cual pactado, el señor **SERRANO IRIZARRY** podría ejercer la opción a compra dentro del término de más o menos 28 meses a partir de la fecha de la firma del contrato (en o antes de 2 de enero de 2024), ello subyugado a que la señora **ANGUEIRA SOTO** culminase el plan de pago de su petición de quiebra bajo el Capítulo 13 y obtuviese el descargo (discharge) del Tribunal de Quiebras del Distrito de Puerto Rico.

De tal modo, poco importa si el señor **SERRANO IRIZARRY** obtuvo o no la pre cualificación del banco para ejercer la opción a compra, puesto que independientemente fuera aprobado, la señora **ANGUEIRA SOTO** estaba inhabilitada o impedida de vender la propiedad hasta tanto obtuviese el descargo o la autorización previa del síndico. De ahí que, la opción a compra estaba supeditada a la culminación del proceso de quiebra. La señora **ANGUEIRA SOTO no acreditó** haber obtenido el descargo o la autorización previa del síndico asignado. Solamente expuso que estaba estable, había salido de una quiebra y estaba recuperando su crédito.

Al conceder un requerimiento de *hogar seguro,* lo que se procura es

---

[110] Apéndice de la *Apelación Civil,* págs. 115-120. Lo cierto es que los señores **ANGUEIRA SOTO** y **SERRANO IRIZARRY** pactaron o acordaron el uso y el destino de la vivienda para después del divorcio lo cual coincide con el primer criterio del Artículo 478 del Código Civil de Puerto Rico de 2020.

[111] (Énfasis nuestro).

mantener las mismas condiciones familiares que existían previo a la ruptura. Asimismo, el interés propietario de los progenitores es desplazado por el interés optimo o mejor bienestar de sus hijos, dado que dicho interés propietario no puede ser un factor *determinante* al momento de decidir si procede o no asentir al *hogar seguro* o *derecho a permanecer en la vivienda familiar*.[112] Ante ello, discernimos que incidió el tribunal de instancia.

Conferimos como *hogar seguro* a beneficio de la menor LCSA, la propiedad privativa destinada a vivienda, ubicada en **Calle Arkansas #1710 en la Urbanización San Gerardo en San Juan, Puerto Rico,** en aras de proteger su interés óptimo y mejor bienestar; y designamos como beneficiario del mismo al señor **SERRANO IRIZARRY**. Dicha designación estará vigente hasta que la menor LCSA advenga a la mayoría de edad o hasta que cumpla los veinticinco (25) años, de estar cursando estudios universitarios ininterrumpidamente al cumplir los veintiún (21) años. Durante la vigencia de esta designación no se podrá vender la propiedad a un tercero sin la autorización del Tribunal. Se ordena inscribir el derecho de *hogar seguro* a favor de la menor LCSA y el señor **SERRANO IRIZARRY**, como beneficiario, en el Registro de la Propiedad.[113]

- IV -

Por los fundamentos antes expuestos, ***revocamos*** la *Sentencia* emitida el 21 de febrero de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal, y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[112] *Candelario Vargas v. Muñiz Díaz, supra.*

[113] Si bien al así resolver, la señora **ANGUEIRA SOTO** sufrirá una limitación temporal de su derecho propietario, tal proceder es con el fin de proteger la continuidad de la convivencia familiar en beneficio de la menor LCSA y minimizar las cargas que usualmente generan las separaciones. Somos del entender que no podemos priorizar un interés propietario por encima del interés óptimo y mejor bienestar de la menor.